In the Matter of FRED FISHER, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, February 4, 1992

## APPEARANCES OF COUNSEL

*Barbara S. Gillers* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

*Kenneth J. Aronson* of counsel *(Hochheiser & Aronson,* attorneys), for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent, Fred Fisher, was admitted to the practice of

law in the State of New York by the First Judicial Department on May 6, 1982, and has, at all times relevant herein, maintained an office for the practice of law within the First Judicial Department.

By notice and statement of charges dated June 26, 1990, respondent was charged with having violated Code of Professional Responsibility DR 1-102 (A) (3), (4) and (6) (now [7]), and DR 2-103 (B), on the ground that he unlawfully attempted to influence the operation of the Legal Referral Service (the Service) operated jointly by the Association of the Bar of the City of New York and the New York County Lawyers' Association. The notice alleged that, on September 7, 1989, respondent gave Alan Charne, the Executive Director of the Service, a "Christmas present" consisting of a sealed greeting card containing $1,000 in cash.

Under count I, respondent was charged with having engaged in illegal conduct involving moral turpitude, in violation of DR 1-102 (A) (3). In count II, the same conduct formed the basis for allegations that respondent engaged in conduct involving dishonesty, fraud, deceit and misrepresentation, in violation of DR 1-102 (A) (4). Count III alleged that the improper payment constituted conduct that adversely reflected on respondent's fitness to practice law, in violation of DR 1-102 (A) (6) (now [7]) and, finally, count IV charged that respondent's conduct violated the prohibition against a lawyer giving anything of value to a person or organization to recommend or obtain employment by a client. (DR 2-103 [B].)

On or about July 23, 1990, respondent served an answer which admitted the material facts surrounding the improper payment, but asserted that the act was the result of "aberrational conduct caused by abrupt changes in some very powerful medicines that caused a hypomanic reaction." A hearing was held on July 30, 1990 and continued for four subsequent dates, concluding on October 15, 1990. Evidence at the hearing established that in August 1988, respondent filed an application to become a member of one or more panels of attorneys from which the Service refers members of the public. He was subsequently interviewed by Alan Charne, who found him qualified for certain panels, and the Service began to refer clients to him shortly thereafter.

In or about June 1989, respondent became involved in a dispute with a client over an unpaid fee of $150, and filed suit against her to recover this amount. The client notified Charne

and, on September 7, 1989, during a lunch date arranged by respondent to discuss this matter, respondent gave Charne the aforementioned greeting card, which bore the message, "Merry Christmas and Happy New Year." Upon returning to his office, Charne opened the envelope, and immediately consulted with officials of the Association of the Bar of the City of New York. Both the card and the cash it contained were returned to respondent by messenger the following day.

In mitigation of his conduct, respondent adduced evidence at the hearing establishing that he had been in psychiatric treatment since 1971. Respondent's condition had been stable for a number of years, and had not precluded him from performing well as a trial attorney with the Legal Aid Society. However, respondent's mental health began to deteriorate after his father died in 1985, and he entered treatment with Sir Martin Roth of Cambridge, England, an internationally renowned psychiatrist specializing in anxiety disorders. Respondent telephoned the psychiatrist for twice-weekly therapy sessions of 15 to 45 minutes in length for approximately three years.

In his testimony before the Panel, Sir Martin stated that in August 1989 he changed respondent's prescribed medication without warning him of possible psychological risks that can be incurred in an abrupt change in medicine. The psychiatrist concluded that the conduct which led to the charges against respondent was wholly out of character for his patient, and was attributable to the change in medication. This psychiatric opinion was echoed by two other experts who testified before the Panel, including the Departmental Disciplinary Committee's own psychiatrist.

After hearing the testimony and receiving other evidence relating to the charges, the Hearing Panel unanimously sustained the charges that respondent had violated DR 1-102 (A) (6) (now [7]) (which prohibits engaging in conduct adversely affecting fitness to practice law) and DR 2-103 (B) (which prohibits giving something of value to a person or organization in order to obtain employment by a client), but declined to sustain the charges that he had also violated DR 1-102 (A) (3) and (4) (which prohibit conduct involving, *inter alia,* moral turpitude, dishonesty and fraud). With respect to sanction, the Panel unanimously recommended the following: "Respondent should be suspended from the practice of law for a period of two years, the execution of which period of suspension should itself be suspended for a three year period of supervision.

During such period of supervision, respondent should be examined regularly by a board-certified New York psychiatrist approved by staff counsel, which psychiatrist shall have agreed to examine the respondent on a regular basis, to report to staff counsel bi-monthly as to the respondent's condition, and to notify staff counsel immediately as to any aberrational conduct which might affect the respondent's ability to practice law. At any time during such period of supervision the staff counsel should be permitted to apply to the court for any relief it deems warranted, including execution of the two-year period of suspension from the practice of law."

By notice of petition dated May 31, 1991, the Committee seeks an order confirming the Hearing Panel's report and recommended sanction. Respondent cross-moves to disaffirm the Hearing Panel's report, to the extent of dismissing count IV, charging the violation of DR 2-103 (B), on the ground that such a finding is not supported by the record. In addition, respondent asserts that the recommended sanction of a suspended suspension is not authorized by the rules of the court and is, in any event, unnecessary insofar as it requires respondent (who continues in psychiatric treatment) to be regularly examined by a psychiatrist, and, further, is inappropriate, insofar as the psychiatrist would be required to report to staff counsel. Respondent urges that, in light of the circumstances, a private reprimand is the appropriate sanction.

Upon the facts presented, we confirm the Committee's conclusion that respondent is guilty of having violated both DR 1-102 (A) (6) (now [7]) and DR 2-103 (B). These findings are fully supported by the law and the facts, which establish that respondent made a $1,000 payment to Charne, and that he did so because of his concern that the dispute he had had with a referred client might serve to discourage future referrals.

With respect to the issue of sanction, the court takes note that the causal connection between respondent's conduct and the change in his medication was established through the testimony of the Committee's own psychiatric expert, as well as that of respondent's two psychiatric witnesses. Mental disorders which have been found to be causally connected to the misconduct do not justify dismissal of the charges, but may be considered in mitigation of sanction. (*Matter of Winston,* 137 AD2d 385, 388; *Matter of Satta,* 71 AD2d 292, 294.) Here, the improper conduct consisted of one isolated incident, and the payment involved did not infringe upon the adminis-

tration of justice in a court of law. *(See, Matter of Lefkowitz,* 105 AD2d 161; *Matter of Goffen,* 103 AD2d 197.)

After weighing the serious nature of the misconduct against the mitigating circumstances, we conclude that the appropriate sanction in this case is that of censure. In making this determination, we note that respondent has voluntarily sought psychiatric treatment and is currently in the care of a local psychiatrist who is monitoring his medications. It is also significant that no claim was made by any of the experts who testified at the hearing that respondent is presently unfit to practice law.

Accordingly, the Committee's motion should be granted solely to the extent of confirming its findings and conclusions, and respondent's cross motion should be granted solely to the extent of disaffirming the recommended sanction, and the respondent should be, and hereby is, censured.

MILONAS, J. P., ROSENBERGER, ELLERIN, KASSAL and SMITH, JJ., concur.

Respondent is censured.